IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EVELYN FAYE BERMUDEZ, | § § | |
| Plaintiff, | § § | |
| V. | § § | CIVIL ACTION NO. 4:16-CV-01070 |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | § § § § § | |
| Defendant. | § § | |

## MEMORANDUM AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Magistrate Judge[1] in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 19), Defendant's Cross-Motion for Summary Judgment (Document No. 13), Defendant's Brief in Support of Cross-Motion for Summary Judgment (Document No. 13-1), and Defendant's Response to Plaintiff's Motion for Summary Judgment (Document No. 20). After considering the cross motions for summary judgment, the administrative record, and the applicable law, the Magistrate Judge ORDERS, for the reasons set forth below, that Defendant's Cross-Motion for Summary Judgment (Document No. 13) is GRANTED, Plaintiff's Motion for Summary Judgment (Document No. 19) is DENIED, and the decision of the Commissioner is AFFIRMED.

---

[1] The parties consented to proceed before the undersigned Magistrate Judge on August 5, 2016. (Document No. 14).

1

## I. Introduction

Plaintiff, Evelyn Faye Bermudez ("Bermudez") brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration ("Commissioner") denying her application for supplemental security income ("SSI"). Bermudez argues the Administrative Law Judge ("ALJ"), Daniel E. Whitney, committed errors of law when he found Bermudez was not disabled. Bermudez argues the decision of the ALJ is not supported by substantial evidence and that the decision was reached by applying improper legal standards. Bermudez seeks an order reversing the ALJ's decision and awarding benefits, or in the alternative, remanding her claim for further consideration. The Commissioner responds that there is substantial evidence in the record to support the ALJ's decision that Bermudez was not disabled, that the decision comports with applicable law, and that the decision should therefore be affirmed.

## II. Administrative Proceedings

On February 15, 2011, Bermudez filed for SSI, claiming she had been disabled since December 31, 2004 due to a history of deep vein thrombosis (DVT), chronic anemia secondary to menorrhagia, rheumatoid arthritis, and depression. (Tr. 132-140). The Social Security Administration denied her application at the initial and reconsideration stages. (Tr. 64-65, 69-70). Bermudez then requested a hearing before an ALJ. (Tr. 71-73). The Social Security Administration granted her request, and the ALJ held a hearing on January 9, 2012. (Tr. 34-63). On February 15, 2012, the ALJ issued his decision finding Bermudez not disabled. (Tr. 22-28).

Bermudez sought review by the Appeals Council of the ALJ's adverse decision. (Tr. 16-18). The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an

error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings, or conclusions; (4) a broad policy issue may affect the public interest; or (5) there is new and material evidence and the decision is contrary to the weight of all the record evidence. After considering Bermudez's contentions in light of the applicable regulations and evidence, the Appeals Council, on February 27, 2013, concluded there was no basis upon which to grant Bermudez's request for review. (Tr. 1-4). The ALJ's findings and decision thus became final.

Bermudez has timely filed her appeal of the ALJ's decision. Bermudez has filed a Motion for Summary Judgment (Document No. 19). Likewise, the Commissioner has filed a Cross-Motion for Summary Judgment (Document No. 13), and a Response to Plaintiff's Motion for Summary Judgment (Document No. 20).

The evidence is set forth in the transcript, pages 1 through 691 (Document No. 6 & appendixes 1-12). There is no dispute as to the facts contained therein.

### III. Standard for Review of Agency Decision

The court, in its review of a denial of disability benefits, is only "to [determine] (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Title 42, Section 405(g) limits judicial review of the Commissioner's decision as follows: "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Act specifically grants the district court the power to enter judgment, upon the pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence. *Id.* While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons*

*v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record nor try the issues de novo, nor substitute its judgment" for that of the Commissioner even if the evidence preponderates against the Commissioner's decision. *Chaparo v. Brown*, 815 F.2d 1008, 1009 (5th Cir. 1987); *see also Jones* at 694; *Cook v. Heckler*, 750 F. 2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but no 'substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quoting *Hemphill v. Weinberger*, 483 F.2d 1127 (5th Cir. 1973)).

**IV.    Burden of Proof**

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 344 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and

4

laboratory diagnostic techniques. *Id.* § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

*Id.* § 423(d)(2)(A). The mere presence of an impairment is not enough to establish that one is suffering from a disability. Rather, a claimant is disabled only if she is "incapable of engaging in any substantial gainful activity." *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)(quoting *Milan v. Bowen*, 782 F.2d 1284 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to determine disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe" impairment or combination of impairments, she will not be found disabled.

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents her from doing any other substantial gainful activity, taking into consideration her age, education, past work experience, and residual functional capacity, she will be found disabled.

*Id.*, 953 F.2d at 293; *see also Leggett v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2s 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). Once the Commissioner demonstrates that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v.*

*Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Leggett*, 67 F.3d at 563.

V. **Discussion**

In the instant action, the ALJ determined, in his February 15, 2012 decision, Bermudez was not disabled at step four. In particular, the ALJ determined Bermudez had not engaged in substantial gainful activity since February 15, 2011 (step one); Bermudez's history of deep vein thrombosis (DVT) with anticoagulant therapy and chronic anemia secondary to menorrhagia were severe impairments (step two); Bermudez did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1 of the regulations (step three); and Bermudez had the RFC to perform less than a full range of light work. In particular,

> [T]he claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 416.967(b). She can sit for 6 hours in an 8-hour day and stand/walk for 6 ours in an 8-hour day. She can lift/carry 20 pounds occasionally and 10 pounds frequently. She can perform work that requires frequent climbing ramps and stairs but cannot perform work that requires climbing ladders, ropes, or scaffolds. She will need to alternate between sitting and standing. (Tr. 26).

The ALJ further found Bermudez is capable of performing her past relevant work as an accounting clerk. (Tr. 28) (step four), and Bermudez was not disabled within the meaning of the Act.

Bermudez presents two issues: (1) The ALJ erred at step two by failing to develop the record regarding Bermudez's mental impairments; and (2) The ALJ's RFC Finding is not supported by substantial evidence. (Document No. 19). In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating, examining and consultative physicians on subsidiary questions of fact; (3) subjective evidence as testified to by the plaintiff and corroborated by family and

6

neighbors; and (4) the plaintiff's education background, work history, and present age. *Wren*, 925 F. 2d at 126.

## A. Objective Medical Evidence.

The objective medical evidence shows Bermudez has been treated for menorrhagia (and the resulting anemia) and deep vein thrombosis (DVT) (and the resulting blood clots and swelling). Prior to the reported disability onset date of December 31, 2004, she was diagnosed with depression and was treated for lumps in her breasts.

Prior to 2003, Bermudez was diagnosed with menorrhagia. Additionally, Doctor Mohammed Abuzahra (Harris County Hopital District) noted "heavy menses" on December 5, 2002. (Tr. 502). However, the first mention of menorrhagia on record was on March 6, 2003 in the Harris County Hospital District.[2] (Tr. 465).

On March 6, 2003, Bermudez was admitted to a hospital in the Harris County Hospital District due to heavy bleeding. After rejecting surgery as an option to alleviate the bleeding, Bermudez was prescribed birth control pills and Percocet to help with pain. (Tr. 465). She returned to the hospital in May and October of that year for similar issues.

On February 18, 2011, Bermudez was admitted to the emergency room at Biloxi Regional Medical Center. She had a hematocrit of twenty-two and received a transfusion of two units of red blood cells. She received two more units the following day, as her hematocrit had only improved to twenty-five. On February 20, her hematocrit was thirty. (Tr. 257).

---

[2] All medical records indicate the menorrhagia has been going on for six+ years by Bermudez's own estimate.

7

On May 1, 2011, Bermudez was admitted to the emergency room at Biloxi Regional Medical Center due to swelling in her legs from a blood clot and was diagnosed with DVT. (Tr. 325-27). Bermudez was prescribed Coumadin, a blood thinner, and Loestrin, to "help with the bleeding." (Tr. 182). Doctor Lydia Latour diagnosed Bermudez with DVT and advised her to stop taking birth control pills because hormones put her at a higher risk for bleeding. (Tr. 325-27). Dr. Latour recommended six months of anticoagulation therapy, but noted ceasing ingestion of oral contraceptives would cause heavy bleeding to return. Dr. Latour recommended a hysterectomy in order to prevent this. The doctor also recommended implanting a vena cava filter, but stated Bermudez was not a candidate at the time, without elaboration. (Tr. 325-27).

On August 17, 2011, Bermudez was treated at Ben Taub Hospital for a swollen leg. She returned in September for a foot injury. Bermudez was admitted again, on November 16, 2011, for lower leg swelling and tenderness related to her DVT. Bermudez was prescribed Coumadin again.

In September 2011, Doctor Eric Warwick evaluated Bermudez and told her only a 20% reduction in her pain would be realistic as DVT sufferers are known to develop chronic lower extremity pain. (Tr. 385). Dr. Warwick recommended Bermudez complete her anticoagulation therapy. Dr. Warwick provided Bermudez with a Metro Lift application so she could obtain free transportation to and from the hospital to receive anticoagulant medication and regular check-ups.

Bermudez was diagnosed with depression in 2002. (Tr. 502). Bermudez did not stop working until 2004, and has not been diagnosed with depression since the initial diagnosis.

At step two, the claimant bears the burden of showing she has a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. The step two analysis requires a claimant's impairment "can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the

individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)(quoting *Estran v, Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). Even if an impairment is found non-severe at step two, the ALJ must still "consider the limiting effects of [a claimant's] impairment(s) even those that are not severe, in determining [RFC]." 20 C.F.R. § 404.1545(e); see also 20 C.F.R. § 404.1523; Social Security Ruling 96-8p, 1996 WL 374184, at *5; *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (The ALJ must "consider the combined effects of all impairments, without regard to whether any such impairment, if considered separately, would be of sufficient severity.")

Bermudez argues the ALJ erred at step two when he determined Bermudez's depression was non-severe without further developing the record by obtaining a consultative evaluation. However, it is well-established that a "full inquiry" can be made without a consultative examination if the record develops the facts to the extent that the ALJ is able to make a determination. *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977). Here, the record shows that the ALJ made a full inquiry utilizing the four broad functional areas used for evaluating mental disorders (referred to as "paragraph B" criteria), set out in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). He found Bermudez has a "mild limitation" in the first three areas (Activities of Daily Living, Social Functioning, and Concentration, Persistence or Pace) and had experienced no limitations or extended episodes in the fourth area (Episodes of Decompensation).

> Because the claimants medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere (20 CFR 416.920a(d)(1)).

(Tr. 25).

9

Additionally, while Bermudez was treated for her DVT condition at Ben Taub, she did not mention being depressed, and none of the health care providers suggested she was depressed and should be referred for treatment. Bermudez had last been diagnosed and treated for depression while she was employed, and the record indicates Bermudez never sought treatment for depression during the years since her conditions allegedly became disabling. Upon the record, the ALJ's analysis of the "paragraph B" criteria supports the ALJ's finding that Bermudez's depression was a non-severe impairment at step two.

Bermudez argues the ALJ's RFC was not supported by substantial evidence because he failed to consider whether Bermudez's depression would prevent her from maintaining employment. Bermudez argues, according to *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986), when dealing with mental impairments, the ALJ is required to go a step further and determine whether the claimant is able to "hold whatever job he finds for a significant period of time" due to their waxing and waning nature. However, the evidence upon which Bermudez relies does not demonstrate that her depression is so debilitating at any point that Bermudez is or was unable to work. Bermudez's last diagnoses occurred while she was still employed, which, as the Commissioner points out, supports the finding that she was not disabled. The court finds the ALJ's RFC Finding was supported by substantial evidence.

Upon this record, substantial evidence supports the ALJ's determination that Bermudez's DVT and chronic anemia secondary to menorrhagia are severe impairments and that rheumatoid arthritis and depression are non-severe impairments. There is no evidence in the medical record of Bermudez being diagnosed or treated for rheumatoid arthritis. The ALJ correctly determined Bermudez's arthritis was a nonsevere condition. (Tr. 25). This factor weighs in favor of the ALJ's decision.

## B. Diagnosis and Expert Opinion.

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. The law is clear that "a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton*, 209 F.3d at 455. The ALJ may give little or no weight to a treating source's opinion, however, if good cause is shown. *Id.* at 455-56. The Fifth Circuit in *Newton* described good cause as where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or in otherwise unsupported by the evidence. *Id.* at 456. "[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Id.* at 453.

Bermudez does not have a regular treating physician. All diagnosis and treatment was done in clinics or hospitals. No diagnosis or expert opinion was given. This weighs neither for nor against the ALJ's decision. The court finds the ALJ's finding at step two is supported by substantial evidence.

## C. Subjective Evidence of Pain.

The next element to be weighed is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and a claimant who is unable to work without some pain or discomfort will not render him disabled. *Cook*, 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain do

11

not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence on the record. 42 U.S.C. § 423. "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Harrell v. Bowen*, 837 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has had the opportunity to observe the claimant. *Hames*, 707 F.2d at 166.

At the January 9, 2012 hearing, Bermudez testified she had not worked since December 31, 2004. (Tr. 40-41). Bermudez testified she can only sit in one position for 30-45 minutes before her leg begins to swell, at which point she must get up and walk around for five minutes or so. (Tr. 50). Bermudez also has to elevate her legs four or five times per day for about 30 minutes to reduce pain and swelling. (Tr. 51). Bermudez cannot perform activities without elevating her legs at some point throughout the day. (Tr. 53). Bermudez also testified, for at least two weeks out of every month, she has heavy menstrual bleeding (menorrhagia). (Tr. 49). This bleeding requires Bermudez to change her sanitary pads once every 45 minutes or so. (Tr. 49). Bermudez rarely leaves her room because she is in pain most of the time, but she is able to go to the grocery store to purchase food. (Tr. 46).

Bermudez also testified, at the January 9, 2012, that her doctors had informed her they would like to do a hysterectomy in order to eliminate her menorrhagia, but the doctors are unable to do any surgery while she is taking Coumadin (blood thinner). (Tr. 42). Bermudez testified the doctors who have examined her would like to minimize her blood clots with medication until she gets to a comfortable level where they're able to take her off the Coumadin and operate. (Tr. 42).

During the ALJ hearing, Bermudez testified she had been under "a lot of stress and depression" but had not seen a psychiatrist or a psychologist. (Tr. 45). There is nothing in the record to suggest the ALJ made improper credibility findings, or that he weighed the testimony improperly. Based on this record, there are significant inconsistencies between Bermudez's subjective complaints including pain and the objective medical evidence. Accordingly, this factor also supports the ALJ's decision.

**D. Education, Work History, and Age.**

The final element to be weighed is the claimant's educational background, work history and present age. A claimant will be determined to be under disability only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

At the January 9, 2012 hearing, Bermudez testified she was 50 years old. Bermudez did not graduate high school, but obtained a GED. Bermudez completed some college. Bermudez's work history included positions as an accounting clerk for a construction company and owner of a tire company, both of which qualify as sedentary, semi-skilled work. (Tr. 36-38).

The record shows the ALJ questioned Vicki Cullenberg, a vocational expert ("VE"), at the January 9, 2012, hearing. "A vocational expert is called to testify because of his familiarity with

job requirements and working conditions. 'The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed.'" *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (quoting *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). It is well settled that a vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record. Beyond the hypothetical question posed by the ALJ, the ALJ must give the claimant the "opportunity to correct deficiencies in the ALJ's hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling*, 36 F.3d at 436.

The VE testified, at the January 9, 2012 hearing, that Bermudez would be able to perform past relevant work as an accounting clerk.

> Q Ms. Cullenberg, for all hypotheticals assume a person of the same age, education and work history as the claimant. Assume a person limited to sitting for six hours, standing and walking six hours. Able to lift and carry 20 pounds occasionally and ten pounds frequently. A person would need to be able to alternate sitting and standing as needed. Probably frequent climbing. No climbing of ladders, ropes or scaffolds. Could a person with these limitations perform any of the claimant's past work?
>
> A Yes, Your Honor, her past work as an accounting clerk, or a tax clerk.
>
> Q If a person is limited to sitting six hours, standing and walking no more than two hours in a day. Again, able to lift ten pounds occasionally and ten pounds frequently. Frequent climbing, but no climbing of ladders, ropes or scaffolds. Could a person with these limitations perform any of the claimant's past work?
>
> A Yes, Your Honor.
>
> ALJ: Mr. Dewberry [Attorney for Plaintiff], questions?
>
> ATTY: Yes. In your first – I didn't quite understand, Your Honor. Your first hypothetical, did you say sitting and standing as needed?

> ALJ: Yeah, alternate sitting and standing as needed.
>
> ATTY: As needed?
>
> ALJ: As needed, correct.
>
> ATTY: Okay. I just wanted to be clear about that. Thank you very much.

(Tr. 59-60). When reexamined by Bermudez's attorney, the vocational expert stated a person would not be able to hold employment if they needed to take breaks at the suggested frequency. (Tr. 59-62).

However, as described above, Bermudez's DVT is controllable with anticoagulant therapy. "[A] person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently substantially limits a major life activities." *Winters v. Pasadena Indep. Sch. Dist.*, 124 Fed. Appx. 822, 824 (5th Cir. 2005) (citing to *Sutton v. United Air Lines*, Inc., 527 U.S. 471, 482-83 (1999)). Not only is the DVT controllable, it can be eliminated with a filter. The same is true for Bermudez's menorrhagia, which could also be eliminated with a hysterectomy. "Disabling pain must be constant, unremitting, and wholly unresponsive to therapeutic treatment." *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Both physical issues are only limiting so long as Bermudez does not seek the surgery and/or treatment necessary to correct them.

Bermudez argues that, because her menorrhagia, anemia and DVT symptoms wax and wane, the ALJ erred when he did not make specific finding that Bermudez was able to maintain, as well as obtain, employment. However, the 5th Circuit held "[i]t is axiomatic that the pain from any type of ailment will vary in intensity," so evidence of a dramatic shift in ability is necessary to trigger this requirement, rather than subjective waxing and waning of pain. *Perez v. Barnhart*, 415 F.39 457, 465 (5th Cir. 2005). There is no evidence in the record that supports Bermudez not

being able to maintain her work. The vocational expert stated Bermudez would be able to work even if she needed to alternate sitting and standing. (Tr. 59).

Here, the ALJ's hypothetical question included the limitations he found supported by the record. Upon this record, there is an accurate and logical bridge from the evidence to the ALJ's conclusion that Bermudez was not disabled. Based on the testimony of the vocational expert and the medical records, substantial evidence supports the ALJ's finding that Bermudez could perform her previous relevant work as an accounting clerk because the requirements for this job are consistent with her RFC. The Court concludes that the ALJ's reliance on the vocational testimony was proper, and that the vocational expert's testimony, along with the medical evidence, constitutes substantial evidence to support the ALJ's conclusion that Bermudez was not disabled within the meaning of the Act and therefore was not entitled to benefits. Further, it is clear from the record that the proper legal standards were used to evaluate the evidence presented. Accordingly, this factor also weighs in favor of the ALJ's decision.

I. **Conclusion**

Considering the record as a whole, the Court is of the opinion that the ALJ and the Commissioner properly used the guidelines propounded by the Social Security Administration, which direct a finding that Bermudez was not disabled within the meaning of the Act, that the ALJ did not err in his failure to order a consultative evaluation for Bermudez's mental condition, that substantial evidence supports the ALJ's RFC finding, and that the Commissioner's decision should be affirmed.

It is ORDERED Plaintiff's Motion for Summary Judgment (Document No. 20) is DENIED, Defendant's Cross-Motion for Summary Judgment (Document No. 13) is GRANTED, and the decision of the Commissioner of Social Security is AFFIRMED.

Signed in Houston, Texas this 30th day of June, 2017.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE